UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
WINIFRED MARIE GARNER and SOPHIA THEUS, on                        :
their own behalf and on behalf of all persons similarly           :
situated,                                                         :
                                                                  :
                                        Plaintiffs,               :
                                                                  :
                       -v-                                        :
                                                                  :
BEHRMAN BROTHERS IV, LLC and BEHRMAN                              :
BROTHERS MANAGEMENT CORP.,                                         :
                                                                  :
                                        Defendants.               :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/16/17

16 Civ. 6968 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Winifred Marie Garner and Sophia Theus bring this putative class action

against Behrman Brothers IV, LLC and Behrman Brothers Management Corp. (collectively,

"Behrman"), seeking recovery of unpaid wages and benefits under the Worker Adjustment and

Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"). Pending now are

Behrman's motion to dismiss plaintiffs' First Amended Complaint ("FAC") under Federal Rules

of Civil Procedure 12(b)(6) and 12(b)(7), Dkt. 42, and to drop both defendants under Rule 21,

Dkt. 40. For the reasons that follow, the Court denies both motions.

## I. Background

### A.    Factual Background[1]

---

[1] The Court draws these facts principally from the FAC, Dkt. 34-1. *See DiFolco v. MSNBC
Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to
state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the
complaint, documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint."). For purposes of the motion to dismiss under Rule 12(b)(6), the
Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in
plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Solely for

1

### 1.      Plaintiffs' Employment with Atherotech

Until February 26, 2016, Garner and Theus were "nominally employed" by Atherotech,

Inc. and Atherotech Holdings, Inc. (collectively, "Atherotech"), and worked at Atherotech

facilities in Birmingham, Alabama.  FAC ¶¶ 5-8.  They bring this suit on behalf of themselves

and more than 300 other Atherotech employees who lost their jobs when these facilities closed in

2016.  *Id.* ¶¶ 11–12.

### 2.      The Relationship Between Atherotech and Behrman

The FAC alleges that Atherotech and Behrman operated as a "single employer" and

together "owned, operated and controlled" the Atherotech facilities at which Garner and Theus

worked.  *Id.* ¶¶ 10, 13(m).  The FAC pleads the following in support of its "single employer"

claim:

In or about 2010, Behrman Brothers Management Corp. created Behrman Brothers IV,

LLC for the purpose of acquiring Atherotech.  *Id.* ¶ 13(a)–(b).  In a Statement of Financial

Affairs filed by Atherotech during bankruptcy proceedings on March 21, 2016, Atherotech

disclosed that Behrman Brothers IV, LLC held at that time more than 90% of issued shares of

Atherotech Holdings, Inc.  *Id.* ¶ 13(c).  Atherotech Holdings, Inc. in turn held a 100% interest in

Atherotech, Inc.  *Id.* ¶ 13(d).

Behrman and Atherotech shared multiple officers and directors.  Such common personnel

included: (1) Grant Behrman, a founding partner of Behrman Brothers Management Corp. and a

director of Atherotech Holdings, Inc.; (2) Robert Flaherty, a former CEO of one of Behrman's

---

purposes of the motions under Rules 12(b)(7) and 21, the Court considers facts outside the
pleadings.  *See Dumann Realty, LLC v. Faust*, 267 F.R.D. 101, 101 n.1 (S.D.N.Y. 2010) ("When
reviewing a motion to dismiss under Rule 12(b)(7), the Court may consider documents and facts
outside the pleadings."); *In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d 272, 281 (S.D.N.Y.
2001) (considering affidavits filed by defendants in evaluating a Rule 21 motion).

portfolio companies and a director of Atherotech Holdings, Inc.; (3) Tom Perlmutter, a partner at Behrman Brothers Management Corp. and a director at Atherotech Holdings, Inc.; (4) Mark Visser, a partner at Behrman Brothers Management Corp. and a director at Atherotech Holdings, Inc.; and (5) Jim McClintic, a former CEO of one of Behrman's portfolio companies and a director of Atherotech Holdings, Inc. and CEO of Atherotech, Inc.[2]  *Id.* ¶ 13(e)–(j).

These common officers and directors helped Behrman to "at all times maintain[] de-facto control over the operations of Atherotech." *Id.* ¶ 13(l).  After Behrman acquired Atherotech, Visser "took the lead for [Behrman] in managing the Atherotech entities." *Id.*  Visser communicated with McClintic by telephone and email "on a daily or near daily basis" and transmitted to McClintic Behrman's instructions regarding the management of Atherotech. *Id.* McClintic carried out these instructions. *Id.*

Behrman and Atherotech maintained common personnel policies implemented by Behrman through Visser, *id.* ¶ 13(k), and Behrman "exercised complete control over the labor decisions concerning Plaintiffs and the Class Members' employment, including the decision to shut down [the Atherotech facilities] and abruptly terminate their employment," *id.* ¶ 13(n).

### 3.    Plant Closings and Alleged WARN Act Violations

The FAC alleges that, after a failed attempt at a sale, Behrman decided to shut down Atherotech and have Atherotech file for bankruptcy. *Id.* ¶ 13(l).  Visser communicated the news of that decision to McClintic. *Id.*  Visser told McClintic "to keep employees in the dark about the impending shutdown" so that the employees would not leave before Behrman was ready. *Id.* Visser also told McClintic to hold "town hall" style meetings with Atherotech employees in the

---

[2] The FAC alleges that Atherotech, Inc. had no board of directors.  *Id.* ¶ 13(j).

weeks before the shutdown and to give the employees "a false sense of hope that the company was going to continue operating." *Id.*

While McClintic thus misled Atherotech employees regarding the company' future, the FAC alleges, Behrman drafted a "purported WARN notice" regarding the plant's closing. *Id.* Visser gave the notice to McClintic and, on behalf of Behrman, instructed McClintic as to how and when to distribute the WARN notice. *Id.* Visser told McClintic to distribute that notice *after* the "effective date" of the shutdown of the Atherotech facilities. *Id.*

On or about February 26, 2017, Garner, Theus, and some 300 or more employees who worked at or reported to the Atherotech facilities were discharged without cause as a result of plant closings. *Id.* ¶¶ 11-12, 18.

Plaintiffs' claims are under the WARN Act, which "requires employers to give sixty days' notice to their employees before mass layoffs or plant closings." *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 140 (S.D.N.Y. 2004). The FAC alleges that plaintiffs were not given 60 days advance written notice and did not receive wages and other employee benefits covering the 60-day period after termination. *Id.* ¶¶ 11, 16, 24, 29.

**B.   Procedural History**

On September 6, 2016, plaintiffs filed an initial complaint, Dkt. 1. It sought (1) compensation for unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension, 401(k) contributions, and ERISA benefits for 60 days after their termination; (2) interests on these amounts; (3) Rule 23 class certification; (4) appointment of their counsel as class counsel; and (5) attorneys' fees and costs, as authorized by the WARN Act, *id.* ¶ 52.

On October 14, 2016, Behrman filed a motion to dismiss under Rules 12(b)(6) and 12(b)(7), Dkt. 9, and a memorandum of law in support, Dkt. 10.  That same day, Behrman filed a motion to drop both defendants under Rule 21, Dkt. 11, and a memorandum of law in support, Dkt. 12.  On November 4, 2016, Plaintiffs filed memoranda in opposition to these motions. Dkts. 25–26.  On November 10, 2016, Behrman filed reply memoranda.  Dkts. 27–28.  On December 15, 2016, the Court heard argument on the pending motions.

On February 7, 2017, plaintiffs filed a motion to file the FAC as an amended complaint. Dkt. 34.  On February 16, 2017, Behrman filed a letter in opposition.  Dkt. 38.  On March 3, 2017, the Court granted the motion to file the FAC and denied as moot the pending motions directed to the underlying complaint.  Dkt. 39.

On March 17, 2017, Behrman again moved to drop both defendants under Rule 21, Dkt. 40, and filed a memorandum of law in support, Dkt. 44.  Behrman also moved to dismiss the FAC under Rules 12(b)(6) and 12(b)(7), Dkt. 42, and a memorandum of law, Dkt. 45, and declarations, in support.  Dkts. 46 and 47.  On March 31, 2017, plaintiffs filed memoranda of law in opposition to these motions, Dkts. 48–49.  On April 7, 2017, Behrman filed reply memoranda, Dkts. 50–51.

## II.    Discussion

As noted above, Behrman moves on three grounds: first, to dismiss the FAC under Rule 12(b)(6); second, to dismiss the FAC under Rule 12(b)(7); and third, to drop both defendants under Rule 21.  The Court addresses each issue in turn.

### A.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court

must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences

in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007).  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Thus,

a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of

a cause of action will not do." *Twombly*, 550 U.S. at 555.

As noted above, the WARN Act mandates that "an employer with 100 or more employees

must, sixty days in advance of a plant closing or mass layoff, provide written notice to each

affected employee or their representative, as well as the state." *In re Great Atl. & Pac. Tea Co.,

Inc.*, 467 B.R. 44, 53 (S.D.N.Y. 2012), *aff'd sub nom. Grocery Haulers, Inc. v. Great Atl. & Pac.

Tea Co.*, 508 F. App'x 63 (2d Cir. 2013).  Such written notice must contain:

> (1) A statement as to whether the planned action is expected to be permanent or
> temporary and, if the entire plant is to be closed, a statement to that effect;
>
> (2) The expected date when the plant closing or mass layoff will commence and
> the expected date when the individual employee will be separated;
>
> (3) An indication whether or not bumping rights exist;
>
> (4) The name and telephone number of a company official to contact for further
> information.

20 C.F.R. § 639.7(d)(1)–(4).  "If an employer who orders a plant closing fails to give the required

notice, it is liable to each affected employee for 60 days pay and benefits." *Guippone v. BH S &

B Holdings LLC*, No. 09 Civ. 1029 (CM), 2010 WL 2077189, at *2 (S.D.N.Y. May 18, 2010),

*aff'd*, 737 F.3d 221 (2d Cir. 2013) (citing U.S.C. § 2104(a)(1)); *see also Vogt*, 318 F. Supp. 2d at 140 ("A principal enforcement mechanism of the Act permits employees to seek damages from their employer in federal court in an amount equivalent to sixty days' pay and fringe benefits when the employer fails to give proper notice of a mass layoff.").

The WARN Act "was enacted in the wake of numerous plant closings in the 1970s and 1980s, in order to soften the blow of job loss to workers and their families by providing some advance notice to allow for transition time to different employment." *Vogt*, 318 F. Supp. 2d at 140; *see also Guippone*, 2010 WL 2077189, at *2 ("Advance notice 'provides workers and their families time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and, if necessary, to enter skill training or retraining that will allow workers to successfully compete in the job market.'" (quoting 20 C.F.R. § 639.1)).

"The WARN Act does not address affiliated corporate liability, such as joint or controlling employer liability, but courts have employed the Department of Labor ('DOL') regulations issued under the WARN Act to determine such liability." *In re Great Atl. & Pac. Tea Co., Inc.*, 467 B.R. at 53 (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 490–91 (3d Cir. 2001); *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168, 173–74 (D. Conn. 2010)); *see also Guippone*, 737 F.3d at 226 (formally adopting multi-factor test outlined in DOL regulations "as the test to be applied in this Circuit in determining whether WARN liability can be imposed on a parent company").

"Under the [DOL] regulations promulgated pursuant to the WARN Act . . . an 'employer' in any given case may encompass both parent and subsidiary 'depending upon the degree of their independence.'" *In re MF Glob. Holdings, Ltd.*, No. 13 Civ. 07218 (LGS), 2014 WL 4054281, at *6 (S.D.N.Y. Aug. 14, 2014) (quoting 20 C.F.R. § 639.3(a)(2)).  To determine the degree of

independence, courts consider factors including "(1) common ownership, (2) common directors and/or officers, (3) unity of personnel policies; (4) dependency of operations, and (5) de facto control." *Guippone*, 2010 WL 2077189, at *4.

"As in any balancing test, application of these factors requires a fact-specific inquiry, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach." *Guippone*, 737 F.3d at 226. Of course, in conducting this balancing test, the Court does not weigh the strength of the evidence, but rather assesses only whether the FAC alleges facts which, if true, would permit a reasonable factfinder to find Behrman liable under the WARN Act. *See Vogt*, 318 F. Supp. 2d at 144.

Here, Behrman concedes that, as to the relationship between Behrman and Atherotech, plaintiffs "may have alleged sufficient facts to meet the first and second factors (common ownership and common directors and/or officers)." Dkt. 45 at 20. Behrman argues, however, that the FAC fails to state a claim because it fails to allege sufficient facts as to the third, fourth, and fifth factors (unity of personnel policies, dependency of operations, and de facto control). *Id.* at 20–21. Behrman claims that the FAC's pleadings as to these three elements are conclusory and therefore insufficient to allege that Behrman was a "single employer" with Atherotech. *Id.* at 21.

Viewing the DOL factors together, the Court finds that the FAC alleges "facts which, if true, would permit a jury to find [Behrman] liable for violation of the WARN Act notice provisions." *Vogt*, 318 F. Supp. 2d at 144–45. Four of the five factors, under the facts alleged, favor liability, including the de facto control factor, which is typically given significant consideration by the courts. Only one factor disfavors liability.

      1.      **Factors Favoring Liability**

8

### a.  Common Ownership

The common ownership factor favors liability.  It inquires "whether a parent or related entity directly owns a separate corporate entity." *Guippone*, 2010 WL 2077189, at \*4.  Here, the FAC alleges just that—that Behrman had a direct ownership interest in Atherotech.  *See* FAC ¶ 13(a)–(c) (alleging that Berhman acquired Atherotech in 2010 and publicly disclosed a 90% ownership interest in 2016).  Nonetheless, "the finding of common ownership . . . 'is of limited significance to the inquiry at hand, since it is well established that stock ownership alone is not grounds for holding a parent liable for its subsidiary's actions.'"  *Guippone*, 2010 WL 2077189, at \*5 (quoting *Vogt*, 318 F. Supp. 2d at 142).

### b.  Common Directors and/or Officers

The common directors and/or officers factor favors liability as well.  It "ordinarily looks to whether the two nominally separate corporations," here, Behrman and Atherotech, "(1) actually have the same people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." *Guippone*, 2010 WL 2077189, at \*5.  The FAC alleges that Behrman and Atherotech had multiple common directors and/or officers.  *See* FAC ¶ 13(e)–(j) (discussing roles of Visser, McClintic, Flaherty, Perlmutter, and Grant Behrman).  However, as "'[i]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary,'" and because "'courts generally presume that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary,'" common directors and/or officers alone "'cannot be enough . . . to establish liability.'"  *Guippone*, 2010 WL 2077189, at \*5 (quoting *Vogt*, 318 F. Supp. 2d at 142).

### c.   Unity of Personnel Policies

The unity of personnel policies factor also favors transfer.  This factor "'is analogous to the aspect in the federal labor law test concerning centralized control of labor operations, which the Second Circuit has considered to include factors such as centralized hiring and firing, payment of wages, maintenance of personnel records, benefits and participation in collective bargaining.'" *Guippone*, 2010 WL 2077189, at *5 (quoting *Vogt*, 318 F. Supp. 2d at 142–43 (internal quotation marks and citation omitted)).

"In the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy." *Vogt*, 318 F. Supp. 2d at 143.  In *Vogt v. Greenmarine Holding, LLC*, a complaint alleged that defendant companies "made the decision to effect the mass layoff of [a direct employer's] employees in violation of the WARN Act notice provisions." *Id.* at 143.  The *Vogt* court found that the unity of personnel policies factor favored WARN Act liability even though the complaint contained "no allegations that the defendant entities controlled or even participated in the day-to-day personnel policies or daily labor operations of [the direct employer]" and "no indication that defendant companies played any role in any day-to-day employment policies at [the direct employer's] plant." *Id.  Vogt* held that allegations as to the actual termination decision could nonetheless satisfy this factor. *See id.* ("[T]he fact that the personnel policy relevant to WARN liability is alleged to have emanated directly from [the defendants] count[s] strongly in favor of WARN liability for those entities.").

Significantly, *Vogt* was decided before "the more rigorous pleading standards applicable since [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544]," *Guippone*, 2010 WL 2077189, at *7.  As a result, courts have since declined to find that the unity of personnel policies factor favors liability where a complaint's allegations as to the defendants' involvement in the termination decision

forming the crux of the WARN Act claim were no more than conclusory. *See id.* at *6 ("[W]hile the allegation that defendants directed the employment loss that triggered this lawsuit would otherwise carry considerable weight under this factor, given the conclusory nature of plaintiff's assertions, it does not counsel in favor of liability here from a joint employer status.").

Here, the FAC alleges that Behrman made the decision to shut down Atherotech and terminate Atherotech's employees in violation of the WARN Act. *Id.* These allegations are not fairly termed conclusory. The FAC alleges that it was Behrman that made the ultimate decision to shut down Atherotech, drafted a purported WARN notice, and, through Visser, communicated the shutdown decision to McClintic and gave McClintic specific instructions as to how to communicate with—and mislead—employees regarding Atherotech's future. *See* FAC ¶ 13(l) (alleging instructions to McClintic to hold "'town hall' style meetings" to falsely reassure employees, and instructions "dictat[ing] the timing and method of distribution of the purported WARN notice"); *cf. Guippone*, 2010 WL 2077189, at *6 (discounting "broad and conclusory assertions, which fail to name any specific actions taken by specific defendants" (internal quotation marks omitted)).

Moreover, here, more than in *Vogt*, the FAC alleges that Behrman played a key role in Atherotech's day-to-day personnel policies or daily labor operations. The FAC alleges that Visser, acting on behalf of Behrman, put into place Atherotech's common personnel policies and "took the lead for [Behrman] in managing the Atherotech entities." FAC ¶ 13(l). According to the FAC, "on a daily or near daily basis, via telephone and email," Visser spoke with McClintic and gave McClintic instructions, on Behrman's behalf, regarding the management of Atherotech, "which McClintic was expected to carry out." *Id.*

11

While the FAC alleges that Visser held a position at Atherotech as a board member at Atherotech Holdings, Inc., the FAC specifically alleges that, with respect to the conduct giving rise to the alleged WARN Act violations, Visser was acting on behalf of the defendant Behrman entities, in his role as a Behrman partner.  *Id.*  ¶ 13(i).  It alleges that Visser managed the Atherotech entities "for the Defendants," *id.* ¶ 13(l), and that, with respect to Atherotech personnel policies, Behrman acted "through Mark Visser," *id.* ¶ 13(k).  The FAC characterizes Visser as an information conduit between Behrman and Atherotech, alleging specific instances in which Visser provided McClintic with "Defendants' instructions," including, as noted, the instance in which Visser relayed instructions regarding distribution of the WARN notice drafted by Behrman.  *Id.* ¶ 13(l).

Accordingly, the Court finds that the unity of personnel policies factor weighs strongly in favor of liability.

### d.    De Facto Control

Finally, the factor of de facto control favors liability.  "The core of this factor is whether one company was the decision-maker responsible for the employment practice giving rise to the litigation." *Guippone*, 737 F.3d at 227 (quoting *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 245 (3d Cir. 2008) (internal quotation marks omitted)); *see also Guippone*, 737 F.3d at 227 ("'[T]he de facto exercise of control prong allows the factfinder to consider whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for the litigation.'" (quoting *Pearson,* 247 F.3d at 491 (internal quotation marks omitted))).

In *Guippone v. BH S & B Holdings LLC*, the Second Circuit characterized the de facto control factor as key.  It explained that, "'because the balancing of the [DOL] factors is not a mechanical exercise, if the de facto exercise of control was particularly striking—for instance,

were it effectuated by disregard[ing] the separate legal personality of its subsidiary[—]then

liability might be warranted even in the absence of the other factors.'" 737 F.3d at 228 (quoting

*Pearson v. Component Tech. Corp.*, 247 F.3d 471, 504 (3d Cir. 2001) (internal quotation marks

and citation omitted)).  In *Guippone*, the Circuit vacated a grant of summary judgment to a

defendant on a WARN Act claim, and remanded to allow the claim to go forward, finding that, as

to the de facto control factor, there was "sufficient evidence from which a jury could conclude

that [the parent] directed the layoffs with no regard to [the subsidiary] separate corporate form."

737 F.3d at 228.

     Similarly, in *Vogt*, the district court denied in part a motion to dismiss a WARN Act

complaint, holding that "the allegation that [defendants] directed [plaintiffs' direct] employer to

enter bankruptcy and shut its facilities, is sufficient to warrant discovery into plaintiffs' claims."

318 F. Supp. 2d at 144.   The Court found that, "[w]hile the other factors cited in the DOL test

taken together do not conclusively weigh in plaintiffs' favor, the de facto control element tips the

balance towards plaintiffs for purposes of these motions to dismiss."  *Id.* at 145.

     Here, the FAC alleges, as noted, that Behrman (a) decided that Atherotech should shut

down and enter bankruptcy; (b) communicated this decision to McClintic through Visser; (c)

instructed McClintic how to deceive employees regarding the shutdown; (d) drafted a purported

WARN notice, and (e) instructed McClintic on how to distribute that notice *after* the shutdown.

*See* FAC ¶ 13(l).  This very conduct forms the basis for Plaintiffs' WARN Act claims.

     The allegations here resemble those in *Austen v. Catterton Partners V, LP*, where the

complaint alleged that the defendants "made the decision to file for bankruptcy, shut down the

[direct employer's] facilities, and terminate their employees."  709 F. Supp. 2d 168, 177 (D.

Conn. 2010).  The district court found that such allegations as to the "precise decisions with

which the WARN Act is concerned[,] . . . [t]aken together, . . . [led] to an inference that

Defendants exercised *de facto* control over the [direct employer]." *Id.* The *Austen* court rejected

defendants' argument that such allegations were "too broad and conclusory to survive a motion

to dismiss." *Id.* (internal quotation marks omitted).

The Court similarly finds here. The FAC's allegations of Behrman's exercise of de facto

control over Atherotech, and of Visser's regular instructions on behalf of Behrman to McClintic

regarding the daily management of Atherotech, strongly weigh in favor of liability.

### 2. Factor Disfavoring Liability

The one factor that disfavors liability is the dependency of operations factor. It

"addresses three areas of overlap between related corporations; (1) sharing of administrative or

purchasing services, (2) interchanges of employees or equipment, or (3) commingled finances."

*Guippone*, 2010 WL 2077189, at *6. The FAC does not contain allegations as to these areas.

However, no one factor is dispositive, *Guippone*, 737 F.3d at 226, and the absence of allegations

as to dependency of operations does not alone prevent a finding of liability, *see Vogt*, 318 F.

Supp. 2d at 143 (complaint survives motion to dismiss against defendants alleged to have

directed shutdown notwithstanding absence of allegations as to dependency of operations).

### 3. DOL Factors: Conclusion

Considering the DOL factors in combination, the FAC's allegations would support a jury

finding of Behrman's liability for WARN Act violations. The factors of common ownership,

common directors and/or officers, unity of personnel policies, and de facto control all favor

transfer, and outweigh the only countervailing factor, dependency of operations. The Court

therefore denies Behrman's motion to dismiss under Rule 12(b)(6).

### B. Rule 12(b)(7)

A party may seek dismissal under Rule 12(b)(7) for failure to join a necessary party under Rule 19. It requires a district court to "dismiss an action where a party was not joined only if: (1) an absent party is required, (2) it is not feasible to join the absent party, and (3) it is determined 'in equity and good conscience' that the action should not proceed among the existing parties." *In re Great Atl. & Pac. Tea Co., Inc.*, 467 B.R. at 58 n.9 (quoting *Republic of Phil. v. Pimentel*, 553 U.S. 851, 862–63 (2008)).

To determine whether an absent party is "required," the Court looks to whether:

> (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). "With respect to the second prong of Rule 19(a), 'there must be more than an unsupported assertion that [the non-joined party] has a claim to that interest.'" *Dunn v. Standard Bank London Ltd.*, No. 05 Civ. 2749 (DLC), 2006 WL 217799, at *2 (S.D.N.Y. Jan. 30, 2006) (quoting *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 140 (2d Cir. 2002)).

"Where a court makes a threshold determination that a party is necessary under Rule 19(a) and joinder of the absent party is not feasible for jurisdictional or other reasons, the court must then determine whether the party is 'indispensable' under Rule 19(b)." *Dunn*, 2006 WL 217799, at *2 (citing *Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002)). It provides that "[t]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Rule 19(b) sets forth

"factors to be considered by the court" in determining whether an absent party is indispensable,

which include:

> first, to what extent a judgment rendered in the person's absence might be
> prejudicial to the person or those already parties; second, the extent to which, by
> protective provisions in the judgment, by the shaping of relief, or other measures,
> the prejudice can be lessened or avoided; third, whether a judgment rendered in
> the person's absence will be adequate; fourth, whether the plaintiff will have an
> adequate remedy if the action is dismissed for nonjoinder.

*Id.*

In its motion to dismiss under Rule 12(b)(7), Behrman challenges plaintiffs' failure to

join Atherotech, which Behrman contends is a necessary and indispensable party under Rule 19.

Dkt. 45 at 13.  Behrman asserts—and plaintiffs do not squarely dispute, *see* Dkt. 49 at 4—that

Atherotech cannot feasibly be joined because plaintiffs missed the deadline to file claims against

Atherotech, which is in bankruptcy proceedings, Dkt. 45 at 13.  Behrman alleges that Atherotech

is necessary as "a primary participant in the underlying dispute" and "the only entity with access

to most of the relevant facts, records, and witnesses needed to litigate this dispute."  *Id.* at 14–16.

Disputing the factual premise of the FAC, Behrman claims that Atherotech and not Behrman

made the challenged decisions as to facility closing, employee termination, and notification.  *Id.*

at 14, 16.

A plaintiff asserting a single employer claim under the WARN Act, however, may choose

not to name a direct employer without foundering on Rule 19, as the Supreme Court has held that

joint tortfeasors are not indispensable parties under Rule 19(a).  *See Temple v. Synthes Corp. Ltd.*,

498 U.S. 5, 8 (1990).  According to the Advisory Committee Notes to Rule 19(a), "a tortfeasor

with the usual 'joint-and-several' liability is merely a permissive party to an action against

another with like liability."  28 U.S.C.App. P. 595.  "Courts have held that since a tortfeasor who

is found liable can seek contribution from a joint tortfeasor, defendants are not prejudiced by the

failure to join all tortfeasors in one action." *Chang Young Bak v. Metro-N. R. Co.*, No. 12 Civ. 3220, 2013 WL 1248581, at *4 (S.D.N.Y. Mar. 26, 2013).

A direct employer, in the context of a WARN Act claim brought under a single employer theory, is such a joint tortfeasor. *Law v. Am. Capital Strategies, Ltd.*, No. Civ. 3:05-0836, 2007 WL 221671, at *18 (M.D. Tenn. Jan. 26, 2007). In *Law v. American Capital Strategies, Ltd.*, the plaintiffs, employees of a common carrier company, Service Transport, alleged that "shutdowns and/or layoffs at Service Transport were not conducted in accordance with the WARN Act." *Id.* at *7. Because Service Transport had become "a defunct liquidating company under the protection of the United States Bankruptcy Court in Delaware," *id.* at *1, plaintiffs brought their WARN Act claims only against American Capital Strategies, Ltd. ("American Capital")—a company that had invested capital in, and provided consulting services to, Service Transport— and alleged that American Capital and Service Transport were "a single employer under the WARN Act," *id.* at *1, *13 n.1. The district court rejected American Capital's motion to dismiss under Rule 12(b)(7) for failure to join the direct employer, Service Transport. It held that "[t]he allegations in this case suggest that, if anything, Service Transport was a joint tortfeasor or co-conspirator in the alleged failure to comply with the WARN Act by failing to provide notice 60 days or more prior to the closings and layoffs." *Id.* at *18. The Court explained that, "because of joint and several liability, joint tortfeasors and coconspirators are not indispensable parties under the Federal Rules of Civil Procedure"; Rule 19(a) does not require joinder of an absent party that can later be held responsible for contribution or indemnification. *Id.; see also Vogt*, 318 F. Supp. 2d at 137 (allowing WARN Act claims to proceed in suit not naming plaintiff's direct employer, and noting that, "[b]ecause [the direct employer] is in bankruptcy proceedings, it is [not] possible . . . to sue the company itself").

Behrman does not cite any contrary case law, *i.e.*, cases holding that a WARN Act claim based on a single employer theory may not go forward without suing plaintiffs' direct employer. Instead, Behrman cites a series of cases in which courts considered corporate subsidiaries to be necessary parties where the parent and subsidiary were alleged to be separate legal entities and where the parent's liability was based on wrongdoing by the subsidiary.   *See Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir. 1985) (subsidiary necessary where, "[a]lthough [parent company] was the only named defendant, the conduct complained of was that of [the parent's] wholly-owned subsidiary"); *Rubler v. Unum Provident Corp.*, No. 04 Civ. 7102 (DC), 2007 WL 188024, at *3 (S.D.N.Y. Jan. 25, 2007) (subsidiary necessary where subsidiary "is still a separate legal entity with separate rights and obligations from [the parent company], and it is [the subsidiary's] rights and obligations that are at the heart of this case"); *Nowakowski v. Kohlberg*, No. 89 Civ. 5621 (RWS), 1991 WL 3028, at *3 (S.D.N.Y. Jan. 8, 1991), *aff'd*, 951 F.2d 1267 (Fed. Cir. 1991) (dismissing, for failure to join an entity, patent claims brought by employee of that entity where plaintiff did "not claim that either [defendant] ever infringed his patent" and "[t]he only connection between the defendants and the patent is through [the absent entity]").  These cases do not include WARN Act claims.  And none involve an claim of liability against a parent based on the parent's *own* alleged wrongdoing.  Here, in contrast, crediting the FAC as the Court must at this stage, *Behrman itself* is alleged to have violated the WARN Act through its own conduct—its own decisions to shut down Atherotech, to fire Atherotech's employees, and not to give those employees proper notice. *See* FAC ¶ 13(l).  Behrman cites no authority that, in such a context, Atherotech is a necessary party.

Accordingly, the Court denies Behrman's motion to dismiss under Rule 12(b)(7).

**C.     Rule 21**

Rule 20(a) permits the joinder of multiple plaintiffs if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).  Both elements are required for a proper joinder of plaintiffs.  *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009); Moore's Federal Practice § 21.02[1] (3d ed. 2009) ("Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties.").

"If a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action."  *Deskovic*, 673 F. Supp. 2d at 159–60.  Rule 21 provides as follows:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21.

In moving to drop both defendants under Rule 21, Behrman contends that both defendants have been "misjoined" because Behrman cannot be considered plaintiffs' employer under the DOL test. *See* Dkt. 44 at 12–21.  Behrman's Rule 21 motion largely reiterates its claims for dismissal under Rule 12(b)(6). *See id.*  But it also contests many factual allegations in the FAC, including as related to Behrman's involvement in the decision to shut down Atherotech, Behrman's ownership interest in Atherotech, and Visser's alleged conduct. *Id*.

In support of its alternative factual narrative, Behrman offers two declarations by Visser. Dkt. 44, Ex. A–B.  It would be improper for the Court to consider these declarations in a motion to dismiss under Rule 12(b)(6) because for that  purpose the Court must accept the FAC's factual allegations as true. *See ATSI Commc'ns, Inc.*, 493 F.3d at 98.  But, in its motion under Rule 21,

Behrman invites the Court to conduct the DOL analysis anew, this type premised on Behrman's version of the facts as set forth in the Visser declarations.  In support, Behrman notes that courts have considered defendants' affidavits in resolving Rule 21 motions.  *See In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d at 281.

This is an improper use of Rule 21.  Defendants cannot bypass the standard of review of a Rule 12(b)(6) motion by relabeling the motion as one under Rule 21.  Were the Court to simply drop both defendants, such a ruling would effectively dismiss the case.  But "[m]isjoinder of parties is not a ground for dismissing an action."  Fed. R. Civ. P. 21.  And, while Behrman's version of the facts may ultimate be proven true, the Court, at this stage, cannot presume that such is so.

And the cases on which defendants rely for the proposition that "[c]ourts frequently apply Rule 21 to drop the lone defendant or all defendants from an action," Dkt. 44 at 28, are far afield.  In *New Generation Christian Church v. Rockdale Cty., Ga.*, the Northern District of Georgia allowed a plaintiff to "amend its own name" by ordering "that New Generation True Holiness Church be JOINED as plaintiff, and . . . that New Generation Christian Church be DISMISSED as plaintiff."  No. 1:12 Civ. 02138 (JEC), 2014 WL 1304911, at *3, *6 (N.D. Ga. Mar. 27, 2014).  In *Brown v. Yellow Transp., Inc.*, the District of Kansas allowed a plaintiff to amend—at her own request—her complaint to substitute the defendant with an affiliated corporate entity that she now understood to have been her employer.  No. 07-2556 (JWL) (DJW), 2008 WL 1995075 (D. Kan. May 6, 2008).  In *Petroleum Data Servs., Inc. v. First City Bancorporation of Tex., Inc.*, the District of Kansas directed the plaintiff to amend the complaint—which had been brought against "First City Bancorporation of Texas, Inc., d/b/a First City National Bank of Midland"—to delete First City Bancorporation of Texas and to assert claims solely against that entity's subsidiary,

First City National Bank of Midland. 622 F. Supp. 1022, 1026 (D. Kan. 1985); the Court did so

after at argument, "the parties agreed [the parent company] was not a necessary party to this

action." *Id.* Finally, in *Pilgrim v. Artus*, the Northern District of New York, on a motion for

summary judgment, substituted the Department of Correctional Services ("DOCS") and the

DOCS Commissioner in for a correctional facility superintendent after a *pro se* plaintiff

challenged a DOCS policy under the Religious Land Use and Institutionalized Persons Act, 42

U.S.C. § 2000cc–1 *et seq*. No. 9:07 Civ. 1001 (GLS) (GHL), 2010 WL 3724881, at *1 (N.D.N.Y.

Sept. 17, 2010). None of these cases is convincing authority to permit defendants to use Rule 21

to stop this action in its tracks. Each involves wholly distinguishable circumstances, largely

involving the removal of parties that both sides agreed did not belong in the case, and involving

decisions by courts to allow the substitution of an entity for a sole defendant or plaintiff so as to

permit the case to proceed.

Accordingly, the Court exercises its "broad discretion in ruling on a motion brought

under Rule 21," *see Glendora v. Malone*, 917 F. Supp. 224, 227 (S.D.N.Y. 1996), and denies

Behrman's motion to drop both defendants.

## CONCLUSION

For the reasons above, the Court denies Behrman's motion to dismiss under Rules

12(b)(6) and 12(b)(7) and denies Behrman's motion to drop both defendants under Rule 21. The

Clerk of Court is respectfully directed to close the motions pending at Dkts. 40 and 42. The

parties are directed to, within two weeks of this order, submit a joint letter to the Court outlining

a proposed schedule for next steps in the case, which contemplates the completion of fact

discovery within four months.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 16, 2017
       New York, New York